UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| TODD BONDS, | ) |
| --- | --- |
| *Plaintiff*, | ) |
| vs. | ) 4:19-cv-151-JMS-DML |
| RISING STAR CASINO RESORT, RYAN HARTNETT, and FULL HOUSE RESORTS, | ) |
| *Defendants*. | ) |

## ORDER

Plaintiff Todd Bonds, proceeding *pro se*, filed a Complaint alleging that he was discriminated against during a visit to Rising Star Casino Resort ("Rising Star") in Indiana. [Filing No. 1.] Pursuant to 28 U.S.C. § 1915(a), the Court granted Mr. Bonds *in forma pauperis* status and screened his Complaint, concluding that the following claims could proceed: (1) a claim against Rising Star and Full House Resorts ("Full House"), the alleged parent company of Rising Star, for race and religion discrimination under Title II of the Civil Rights Act, 42 U.S.C. § 2000a; and (2) a claim against Rising Star, Full House, and Ryan Hartnett, the Director of Security at Rising Star, for race discrimination under 42 U.S.C. § 1981. [Filing No. 4.] Defendants filed a Motion to Dismiss Mr. Bonds' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Filing No. 10.] They also ask the Court to strike certain portions of Mr. Bonds' Response to their Motion and an affidavit that he filed in support of his Response. [Filing No. 15.] These motions are now ripe for the Court's decision.

# I.
## STANDARD OF REVIEW

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Jurisdiction is the "power to decide," *Boley v. Colvin*, 761 F.3d 803, 805 (7th Cir. 2014), and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary, *In re Chicago, R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).

"The law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotations and alteration omitted). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject matter jurisdiction exists for his claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

Under Rule 12(b)(6), on the other hand, a party may move to dismiss a claim that does not state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). To that end, the complaint need only provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To survive a Rule 12(b)(6) motion, the complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has

2

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint under Rule 12(b)(6), the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). This review is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

## II.
### BACKGROUND

Consistent with the standard of review outlined above, the following allegations from Mr. Bonds' Complaint are taken as true for purposes of deciding Defendants' Motion to Dismiss.

Mr. Bonds, who is African American and Muslim, visited Rising Star in June 2019. [Filing No. 1 at 3.] Mr. Bonds alleges that Rising Star employees "routinely have shown blatant racial intolerance and hostility toward black patrons." [Filing No. 1 at 4.] On his first night there, he went to the casino's buffet for a late dinner. [Filing No. 1 at 5.] During his first trip through the buffet line, he observed food labeled "beef ribs," and asked the nearest employee if she knew whether the meat was kosher or halal. [Filing No. 1 at 5.] The woman did not respond and, thinking that she did not hear him, Mr. Bonds stepped closer and asked the question again. [Filing No. 1 at 5.] The woman briefly paused and then "took off running." [Filing No. 1 at 5.] Mr. Bonds asserts that this employee "tried to make [him] into Emmitt [sic] Till by crying wolf about

3

a big black man asking her questions about the quality of the meats."[1]  [Filing No. 1 at 4.]  He further alleges that he was made "the victim of the scary Negro narrative by [this] white female employee."  [Filing No. 1 at 8.]

During a subsequent trip through the buffet line on the same night, Mr. Bonds saw the female employee talking with a male employee, and it was obvious that the employees were discussing Mr. Bonds.  [Filing No. 1 at 5-6.]  Mr. Bonds believed that the employees were "engaging in [a] sinister, racist plot."  [Filing No. 1 at 4.]  Later, Mr. Bonds observed a group of white employees staring at him with disdain, which made him so uncomfortable that he left the buffet area before finishing his meal.  [Filing No. 1 at 6.]

Mr. Bonds visited the buffet a second time during his stay, and another female employee ignored his attempts to ask her questions about the food.  [Filing No. 1 at 6.]  Another customer who was standing behind Mr. Bonds noticed the employee's behavior and remarked that the buffet employees were rude.  [Filing No. 1 at 6.]  When Mr. Bonds was finally able to get the employee's attention, he asked her whether the meat on the buffet was properly labeled as "pork" and "beef."  [Filing No. 1 at 6.]  The employee responded, "Who cares?"  [Filing No. 1 at 6.]  Mr. Bonds explained that he wanted to know because he is Muslim, to which she responded, "Eww, you're one of them?"  [Filing No. 1 at 6.]  Mr. Bonds left the buffet area.  [Filing No. 1 at 6.]

Two days later, two casino employees knocked on Mr. Bonds' hotel room door and informed him that he was being evicted from the hotel and banned from ever returning to the resort.  [Filing No. 1 at 6.]  The employees gave Mr. Bonds two envelopes, one containing a cash refund

---

[1] Emmett Till was a 14-year-old black teenager who was abducted, beaten, and murdered in 1955 by a group of white men who accused him of whistling at a white woman.  *See e.g.*, Ronald Turner, *Remembering Emmett Till*, 38 HOW. L.J. 411, 414-18 (1995).  The murderers were acquitted by an all-white jury, and the incident played an important role in inspiring and galvanizing the Civil Rights Movement.  *Id*. at 419-21.

4

of his payment for the hotel room and the other containing a letter signed by Mr. Hartnett, the Director of Security at Rising Star. [Filing No. 1 at 4; Filing No. 1 at 6.] The letter stated that Mr. Bonds was being banned from the hotel for "improper conduct toward an employee," but did not provide any further detail. [Filing No. 1 at 4.] Mr. Bonds asserts that he was banned "for reasons based on race and religion." [Filing No. 1 at 8.]

As soon as Mr. Bonds saw that Mr. Hartnett had signed the eviction letter, Mr. Bonds "knew that this was simple retaliation" because Mr. Hartnett had previously been an employee of a different casino and in his role as such had discriminated against Mr. Bonds in December 2013. [Filing No. 1 at 6-7.] Mr. Bonds had filed a lawsuit against Mr. Hartnett's previous employer, Hollywood Casino ("Hollywood"), in which Mr. Hartnett "might or might not have been named." [Filing No. 1 at 7.] Mr. Bonds alleges that Mr. Hartnett's actions "ultimately sealed the case" against Hollywood, which eventually settled. [Filing No. 1 at 7.] According to Mr. Bonds, from 2014 to 2019, Mr. Hartnett "struggled" at his job at Hollywood. [Filing No. 1 at 7.]

During the same period from 2014 to 2019, Mr. Bonds and Mr. Hartnett would periodically encounter each other at yet another casino located in Cincinnati. [Filing No. 1 at 7.] On one occasion in 2017, Mr. Hartnett "appeared to be ready to attack" Mr. Bonds and lunged at him, and Mr. Bonds reported the incident to casino security. [Filing No. 1 at 7.] Mr. Bonds' friends, who were employed at Hollywood, informed Mr. Bonds that Mr. Hartnett blamed Mr. Bonds for Mr. Hartnett's failure to quickly advance through Hollywood's ranks and for his ultimate termination from the casino. [Filing No. 1 at 7.] Mr. Bonds asserts that, in June 2019, Mr. Hartnett "was finally able to exact some revenge." [Filing No. 1 at 7.]

The Court previously concluded that Mr. Bonds sufficiently alleged claims for: (1) injunctive relief against Rising Star and Full House under Title II, relating to racial and

5

religious discrimination; and (2) racial discrimination only against Rising Star, Full House, and Mr. Hartnett under § 1981. [Filing No. 4 at 4-5.] The Court's ruling, however, was without prejudice to Defendants' right to file a motion under Rule 12. [Filing No. 4 at 6.] Defendants filed a Motion to Dismiss Mr. Bonds' claims pursuant to Rules 12(b)(1) and 12(b)(6). [Filing No. 10.]

## III.
### DISCUSSION

### A. Motion to Strike

Mr. Bonds' affidavit in support of his Response to Defendants' Motion to Dismiss contains four paragraphs. [Filing No. 13.] The first paragraph describes Mr. Bonds' efforts to determine whether he needed to file a complaint with a civil rights organization as a prerequisite to filing a federal lawsuit. [Filing No. 13 at 1.] The remaining paragraphs contain allegations concerning Mr. Hartnett. [Filing No. 13 at 1.] In Paragraph 2, Mr. Bonds states that Mr. Hartnett was directly involved in discriminating against Mr. Bonds in the form of excluding him from a preferred players' lounge at Hollywood, resulting in a federal lawsuit. [Filing No. 13 at 1.] In Paragraph 3, Mr. Bonds states that he had seen Mr. Hartnett several times at a casino in Cincinnati and Mr. Hartnett had tried to intimidate him during those encounters. [Filing No. 13 at 1.] In Paragraph 4, Mr. Bond states that Mr. Hartnett was the person who signed the letter banning Mr. Bonds from Rising Star. [Filing No. 13 at 1.]

In their Motion to Strike, Defendants ask the Court to strike Paragraphs 1, 2, and 3 of the affidavit, as well as the arguments appearing under the second and third subheadings of Mr. Bonds' Response—which relate to Mr. Hartnett's alleged history of discrimination against black casino patrons and Mr. Bonds' efforts to determine whether there were any administrative prerequisites for filing a federal action, respectively. [Filing No. 15 at 3.] Defendants argue that, in ruling on a motion to dismiss, the Court cannot consider evidence outside of the pleadings. [Filing No. 15 at

2.] They also assert that a plaintiff is not permitted to include in his response brief or a supplemental affidavit additional allegations that are not contained in the complaint, and the Court cannot consider such allegations. [Filing No. 15 at 2.]

As discussed further below, Paragraph 1 of the affidavit and Section 3 of the Response are relevant to the Court's determination of whether subject matter jurisdiction exists over Mr. Bonds' Title II claim. Accordingly, the Court can and must consider those things in ruling on the Motion to Dismiss, to the extent that the Motion seeks dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Apex Digital*, 572 F.3d at 444; *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) ("The federal courts have an independent 'obligation at each stage of the proceedings to ensure that [they] have subject matter jurisdiction over the dispute.'") (citation omitted) (alteration in original). Defendants' requests to strike Paragraph 1 of the affidavit and Section 3 of the Response are therefore without merit.

Defendants are correct to the extent that they assert that a plaintiff may not use a response brief to add new claims or amend his complaint. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (acknowledging the "axiomatic rule that a plaintiff may not amend his complaint in his response brief" to a Rule 12(b)(6) motion). However, "'[a] plaintiff need not put all of the essential facts in the complaint;' he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001) (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)); *see also United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) ("The party defending the adequacy of a complaint may point to facts in a brief or affidavit in

7

order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment.") (internal quotations and citation omitted).

The information that Mr. Bonds included in his Response and affidavit concerning Mr. Hartnett's alleged history of discrimination are, at most, clarifications and additional details relating to facts already alleged in the Complaint. Specifically, Mr. Bonds alleged in the Complaint that: (1) Mr. Hartnett had discriminated against him in the past, resulting in a lawsuit against Hollywood and adverse employment action by that casino against Mr. Hartnett; and (2) the two men encountered each other several times, including an incident at a casino in Cincinnati. [Filing No. 1 at 6-7.] These are the same matters that Mr. Bonds discusses in his response and affidavit. [Filing No. 12 at 2-3; Filing No. 13 at 1.] Accordingly, the additional details do not materially change the Court's analysis, do not appear to be an attempt to amend the Complaint or add new claims, and need not be stricken from the record because they were properly presented. *See Pirelli,* 631 F.3d at 448; *Help At Home*, 260 F.3d at 752-53; *Hanna*, 834 F.3d at 779. Defendants' Motion to Strike is **DENIED**, with the caveat that the Court will only consider the contested portions of the Response and affidavit for proper purposes as outlined above.

### B. Motion to Dismiss

#### *1. Title II Claim*

Defendants argue that the Court should dismiss Mr. Bonds' Title II claim pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction. [Filing No. 11 at 2.] Specifically, Defendants argue that because Mr. Bonds did not comply with Title II's jurisdictional requirement that he give notice to the Indiana Civil Rights Commission ("ICRC") thirty days before filing this action, the Court cannot adjudicate his claim. [Filing No. 11 at 2.]

Mr. Bonds responds that, prior to filing this lawsuit, he made a diligent effort to ensure that he was complying with procedural requirements. [Filing No. 12 at 4.] He asserts that he "made a phone call to the agency the Defense mentions and a similar agency" to ask whether he was required to submit any paperwork to those agencies before pursuing action in federal court. [Filing No. 12 at 4.] He states that he "was told in no uncertain terms" that he would not have to file a claim with the agency because he was never an employee of Rising Star. [Filing No. 12 at 4.] Finally, Mr. Bonds states that, when he filed his previous lawsuit involving Mr. Hartnett, he was not required to file a claim with any agency. [Filing No. 12 at 4.] In Paragraph 1 of Mr. Bonds' affidavit, he states that, prior to filing this action, he called several "Indiana civil rights organizations" and each told him that he was not required to file a complaint "with any of those civil rights organizations" prior to initiating a lawsuit in federal court. [Filing No. 13 at 1.]

In reply, Defendants reiterate their argument that, because Mr. Bonds failed to allege in the Complaint that he provided the required notice to the ICRC, the Court lacks jurisdiction over his Title II claim. [Filing No. 14 at 1-2.] Defendants also assert that, while it is improper for a plaintiff to add new allegations in a response brief, Mr. Bonds' new allegations and his affidavit demonstrate that the Court lacks jurisdiction because he failed to comply with the notice requirement. [Filing No. 14 at 2.]

Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). In the case of an alleged act or practice prohibited by Title II which is also prohibited by state law, and where state authorities are authorized to grant or seek relief from such discrimination, the plaintiff must provide notice to the appropriate state

9

authority at least thirty days prior to commencing a federal lawsuit. 42 U.S.C. § 2000a-3(c); *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir. 1993). "The requirements of Section 2000a-3(c) are jurisdictional and, unless those requirements are met, the federal courts do not have jurisdiction to decide the dispute." *Stearnes*, 3 F.3d at 1144. "A Title II plaintiff must demonstrate that he or she has met the procedural prerequisites of section 2000a-3(c) prior to filing suit in federal court." *Id*. at 1145.

Indiana law prohibits racial and religious discrimination concerning access to public accommodations and characterizes any burdens on equal access as "discriminatory practices." Ind. Code § 22-9-1-2-(a), (b). Furthermore, under Indiana law, the ICRC is tasked with receiving and investigating complaints alleging discriminatory practices, may order that any person engaging in discriminatory practices cease and desist from such practices, and can take affirmative action to remedy the harms caused by those practices. Ind. Code § 22-9-1-6(d), (j). Accordingly, a plaintiff asserting a claim under Title II must first provide notice to the ICRC. *See Swarn v. Pizza King*, 2001 WL 1712507, at *2 (S.D. Ind. Dec. 6, 2001) (dismissing Title II claim without prejudice because plaintiffs "failed to give written notice to the ICRC thirty days before filing their Complaint"); *Brown v. Harner*, 2015 WL 2340608, at *3 (N.D. Ind. May 13, 2015) (same).

Here, the Court cannot overlook Mr. Bonds' own concession and statements demonstrating that the Court lacks subject matter jurisdiction over his Title II claim. Because Mr. Bonds concedes that he did not provide proper notice of his claim to the ICRC, regardless of his reasons for failing to do so, his Title II claim must be **DISMISSED without prejudice** for lack of jurisdiction.

   2. *§ 1981 Claim*

Defendants argue that Mr. Bonds' allegations are insufficient to state a claim for racial discrimination under § 1981 for three reasons. [Filing No. 11 at 3.] First, Mr. Bonds failed to

name the individual employees who allegedly discriminated against him at the buffet. [Filing No. 11 at 3; Filing No. 11 at 5.] Second, Mr. Bonds has not sufficiently alleged that any of the named Defendants are liable for the unidentified employees' conduct under the "cat's paw theory," as he did not allege that Mr. Hartnett was a supervisor of the unidentified employees or that he acted in furtherance of the employees' discriminatory intentions. [Filing No. 11 at 5.] Third, Mr. Bonds fails to plausibly allege that his mistreatment was based on his race because—apart from referencing a "racial trope" and relying on "evocative" imagery—he provides no allegations that the mistreatment was in any way related to his race. [Filing No. 11 at 4-6.] Defendants also assert that Mr. Bonds' allegations demonstrate that Mr. Hartnett's conduct was motivated by a personal vendetta or desire for revenge, not racial animus. [Filing No. 11 at 6-7.]

In response, Mr. Bonds argues that, because he is proceeding *pro se*, his allegations should be liberally construed and held to less stringent standards than pleadings drafted by attorneys. [Filing No. 12 at 2.] Mr. Bonds asserts that Mr. Hartnett has a history of discriminating against black casino patrons, and an email from Mr. Hartnett was "used as a deciding factor" in Hollywood's decision to settle the previous discrimination lawsuit brought by Mr. Bonds. [Filing No. 12 at 2-3.]

In reply, Defendants reiterate their argument that Mr. Bonds failed to "connect the dots" between his race and his alleged mistreatment, and "merely allud[ing] to a racial trope" does not make his allegations plausible. [Filing No. 14 at 2-3.] They argue that their Motion is not based on the quality of Mr. Bonds' draftsmanship, and instead properly asserts that Mr. Bonds' allegations are insufficient to state a claim. [Filing No. 14 at 3-5.] Finally, Defendants argue that, by including new allegations in his Response, Mr. Bonds has effectively given the Court a preview of how he would amend his Complaint if given the opportunity, and because he will not be able to

11

cure the defects in the Complaint, this claim should be dismissed with prejudice because amendment would be futile. [Filing No. 15 at 5-6.]

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). Making and enforcing contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Although litigants often invoke this provision in the context of discrimination in making and enforcing employment contracts, courts have permitted claims under § 1981 alleging illegal discrimination in retail establishments. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006), *as amended on denial of reh'g* (May 25, 2006). The elements of a claim for discrimination under § 1981 are: (1) the plaintiff is a member of a racial minority; (2) the defendants intended to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Id.*

Defendants focus their argument on the second element: intent.[2] [Filing No. 11 at 3.] As a preliminary matter, it is hard to understand how Mr. Bonds' Complaint—which explicitly alleges racial discrimination and contains various references that any person of ordinary historical or social understanding would interpret as expressing the idea that Mr. Bonds was the victim of racism—

---

[2] Although Defendants do not concede that the alleged discrimination interfered with a contract, [Filling No. 11 at 3 n.3], Mr. Bonds' allegations are sufficient in that regard. Mr. Bonds alleges that he was evicted from his hotel room, refunded money that he already paid, and banned from the resort, which not only terminated his existing contract to stay for the remainder of his visit, but also prevented him from engaging in any future transactions at or with the resort. *See Bagley v. Ameritech Corp.*, 220 F.3d 518, 521-22 (7th Cir. 2000) (explaining that a retail employee's actions interfere with a contract under § 1981 when they terminate a transaction or prevent the plaintiff from entering into a transaction, rather than merely offending the plaintiff to the point where he voluntarily leaves or declines to pursue the transaction).

12

could be characterized as failing to connect the alleged mistreatment to race. [*See* Filing No. 1 at 4 (stating that Rising Star employees "routinely have shown blatant racial intolerance and hostility toward black patrons," mentioning a "sinister, racist plot," and referencing Emmett Till in the context of an interaction between a black man and a white woman); Filing No. 1 at 8 (alleging that Mr. Bonds "was the victim of the scary Negro narrative").] Mr. Bonds certainly alleged that Defendants intended to discriminate against him on the basis of race, such that Defendants are on notice of the nature of the claim and the grounds upon which it rests. *See Erickson*, 551 U.S. at 93. This in combination with his other factual allegations—including that a white employee ran away from him when he spoke to her, that a group of white employees were staring at him following that interaction, and that he was banned from the hotel by an employee who had discriminated against him in the past—make his allegations of discriminatory intent plausible. Whether Mr. Bonds can ultimately prove discriminatory intent is another question entirely, but that question is not before the Court at this time. The existence of discriminatory intent is an issue of fact that must be resolved on a more developed record.

It is true that Mr. Bonds' allegations also show that he and Mr. Hartnett had a prior relationship that may have influenced Mr. Hartnett's actions. However, the idea that Mr. Hartnett may have been motivated by a desire for revenge does not negate the possibility that he also could have been motivated by discriminatory animus, nor does it establish that his purported desire for revenge does not stem from a previous incident of racial discrimination. Again, Mr. Hartnett's true intent is a factual matter to be decided at a later time. For now, it is sufficient that Mr. Bonds has alleged facts stating a plausible claim that Mr. Hartnett's actions were racially motivated.

Additionally, Defendants' argument that Mr. Bonds has failed to state a claim because he did not identify the buffet employees and cannot impute their alleged racial animus to any other

13

Defendant misses the point. Defendants rely on *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), which discusses individual and employer liability for discrimination under the "cat's paw theory." "The cat's paw theory derives its name from a fable in which a monkey convinces an unusually dim cat to pull chestnuts out of a hot fire. As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none left for the cat." *Id.* at 897 n.3 (internal quotations and citations omitted). The theory imposes liability on corporate employers where the individual actually taking the adverse action (*i.e.*, the cat) lacked the necessary discriminatory intent, because some other employee (*i.e.*, the monkey), acting as agent of the employer, did indeed possess the necessary intent. *Id.* at 897 ("Our cases have long recognized that a final decision-maker's reliance on an improperly motivated recommendation from a subordinate may render the corporate employer liable because the subordinate acts as the firm's agent."). The theory also permits liability against the individual with the discriminatory intent (*i.e.*, the monkey), regardless of whether that individual lacked the authority to personally carry out the adverse action. *Id.* at 899 ("The cat's paw theory can support individual liability under § 1981 for a subordinate employee who intentionally causes a decision-maker to take adverse action against another employee . . . .").

Notably, *Smith* and other cases to consider the cat's paw theory of liability did so in the context of employment discrimination, which is different from the facts presented by Mr. Bonds' allegations. Regardless, to the extent that these principles apply to the instant case, they do not warrant dismissal of Mr. Bonds' claim because Mr. Bonds does not need to invoke the cat's paw theory at all. Specifically, Mr. Bonds' story of what happened to him involves monkeys and employers but no cats. He alleges that he was the victim of discrimination by buffet employees

14

and Mr. Hartnett, for which Rising Star and Full House are liable as employers. Completely independent from the cat's paw theory, an aggrieved customer can bring a claim against a business or corporation for its employees' discriminatory conduct. *See Pourghoraishi*, 449 F.3d at 756-60 (§ 1981 claim against gas station for clerk's conduct); *Bagley v. Ameritech Corp.*, 220 F.3d 518, 521-22 (7th Cir. 2000) (§ 1981 claim against cell phone retail store for store employee's conduct); *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir.1996) (§ 1981 claim by customer against office supply store for store employee's conduct). In addition, Mr. Bonds can state a claim against Mr. Hartnett for his own discriminatory conduct. Whether Mr. Bonds' allegations are read to imply that the encounters at the buffet partly informed Mr. Hartnett's actions or were unrelated, the fact remains that Mr. Hartnett was alleged to have held his own discriminatory animus. In that sense, Mr. Hartnett is not alleged to be an innocent cat, and whether he is a direct supervisor of the buffet employees is irrelevant.[3] Mr. Bonds has sufficiently alleged a claim for race discrimination under § 1981 against all Defendants, and that claim **shall proceed**.

## IV.
### CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion to Strike, [15]. In addition, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, [10], as follows:

- The Motion to Dismiss is **GRANTED** to the extent that Mr. Bonds' Title II claim is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction; and

---

[3] It is possible that the cat's paw theory could apply to hold Rising Star and Full House liable if it turns out that Mr. Hartnett—unaware of the buffet employees' racial animus—banned Mr. Bonds from the resort based on information provided by the buffet employees. The Court does not understand this to be the intent of Mr. Bonds' allegations, and instead interprets the allegations to assert that Mr. Hartnett acted with discriminatory intent of his own. Either way, the question of which parties possessed which types of intent is a factual one to be decided later.

- The Motion to Dismiss is **DENIED** to the extent that Mr. Bonds' § 1981 claim against all Defendants **shall proceed**.

Date: 2/5/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Todd Bonds
P.O. Box 11237
Cincinnati, OH 45211